IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

APRIL RIGGS,

    Plaintiff,

v.

                              No. 1:18-CV-00485-JHR-KK

RAY BACA, Deputy Director, New Mexico
Livestock Board; P. ROBERT ALEXANDER,
Executive Director, New Mexico Livestock Board;
NEW MEXICO LIVESTOCK BOARD; and
BERNADETTE TORR, State Personnel Office,

    Defendants.

## MEMORANDUM OPINION AND ORDER[1]

THIS MATTER comes before the Court on the following motions: Motion to Dismiss Plaintiff's Claims Against Defendant P. Robert Alexander [Doc 26], the Motion to Dismiss Plaintiff's Claims Against Defendant New Mexico Livestock Board [Doc 28], and the Motion to Dismiss Plaintiff's Claims Against Defendant Bernadette Torr [Doc 30]. The Court, having considered the submissions, the relevant law, and being otherwise fully advised in the premises finds that Defendants' motions are well taken and should be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from events related to Plaintiff's employment with Defendant NMLB that allegedly began in or around July 2015. [Doc. 18]. Plaintiff filed her initial complaint in this matter on May 24, 2018. [Doc. 1]. Plaintiff filed an amended complaint [Doc. 13] on June 20, 2018 and a second amended complaint [Doc. 18] on July 11, 2018. The claims advanced in the second

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter judgment in this case. [Doc. 3; Doc. 10; Doc. 11].

amended complaint ("complaint") are the subject of the motions at issue here. [Doc. 26; Doc. 28; Doc. 30].

In her complaint Plaintiff alleges that after being promoted from Livestock Inspector II to Area Supervisor in July 2015, she was not compensated at a rate comparable to her male counterparts and that Defendant Baca (Plaintiff's immediate supervisor) and Defendant Alexander (Executive Director of the NMLB) otherwise discriminated against her on the basis of gender in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. [Doc. 18, ¶¶ 6-7, 19, 28, 65-154]. Plaintiff further alleges that Defendants Baca and Alexander retaliated against her for seeking redress of her grievances for the disparate pay and treatment, and for raising concerns regarding statutory and regulatory violations she believed they were committing, in violation of the First Amendment of the United States Constitution and New Mexico's Whistleblower Protection Act NMSA 1978, Sections 10-16c-1 to -6 (2010) ("WPA"). [Doc. 18, ¶¶ 155-176, 177-201]. Plaintiff also alleges that Defendant NMLB was or should have been aware of the discrimination and retaliation to which she was subjected by Defendants Baca and Alexander, and that it, through its officers and directors adopted policies, practices, or decisions that subjected her to such discrimination and retaliation. [Doc. 18, ¶¶ 202-210]. Finally, Plaintiff alleges that Defendant Torr violated New Mexico's Inspection of Public Records Act NMSA 1978, Sections 14-2-1 to -12 (1947, as amended through 2011) ("IPRA") by failing to provide copies of records or documents related to an investigation that resulted in a letter of reprimand and placement of Plaintiff on administrative leave. [Doc. 18, ¶¶ 211-231].

On July 25, 2018, Defendants Alexander, NMLB, and Torr, filed separate motions to dismiss seeking dismissal of the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 26; Doc. 28; Doc. 30]. The primary issues presented by Defendants'

motions are: (1) whether Plaintiff's First and Fourteenth Amendment claims against Defendants Alexander and NMLB, brought pursuant to 42 U.S.C. § 1983, are sufficiently pled; (2) whether Plaintiff's WPA claims against Defendant Alexander are sufficiently pled; and (3) whether Plaintiff's WPA claims against Defendant Alexander and IPRA claim against Defendant Bernadette Torr are barred by the immunity provided under the Eleventh Amendment of the United States Constitution. [Doc. 26; Doc. 28; Doc. 30].[2] These challenges to the sufficiency of Plaintiff's claims will be addressed in turn.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement required by Rule 8(a)(2) must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2003) (per curium).

The Court may dismiss a complaint under Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramirez v. Dep't of Corr.*, *Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (quotation omitted). A complaint will withstand a motion to dismiss under Rule 12(b)(6) if it contains allegations of fact which, taken as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544 at 570. "In determining the plausibility of a claim, [the Court] look[s] to the elements of the

---

[2] Due to the significant overlap of the issues raised in Defendants' motions to dismiss [Doc. 26; Doc. 28; Doc. 30] the Court addresses the issues raised in each motion and resolves each motion with this Order.

particular cause of action, keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (internal quotation marks and citations omitted). "The nature and specificity of the allegations required to state a plausible claim will vary based on context. But mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id.* "Thus, a claim is facially plausible if the plaintiff has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

#### A. Plaintiff's Section 1983 Claims Against Defendants Alexander and NMLB Are Not Plausible on Their Face

##### 1. The Law Regarding Section 1983

Section 1983 of Title 42 of the United States Code provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or from federal statute. *See Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002) ("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights....") (internal quotation marks, alteration, and citation omitted). Section 1983 authorizes an injured person to assert a claim for

relief against a person who, acting under color of state law, violated the claimant's federally protected rights.

To state a claim upon which relief can be granted under Section 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). The allegations must establish: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) (alteration in original) (internal quotation marks and citation omitted)).

### 2. Plaintiff's Section 1983 Claims Against Defendant NMLB and Defendant Alexander in His Official Capacity Are Not Plausible on Their Face

In this case, Defendants NMLB and Alexander argue that Plaintiff's Section 1983 claims against Defendants Baca and Alexander in their official capacities and against Defendant NMLB are improper because as arms of the state, they are not "persons" to whom the statute applies. [Doc. 28, p. 2; Doc. 29, pp. 7-9]. Plaintiff concedes this point. [Doc. 36, p. 9]. She consents to dismissal of her Section 1983 claims against Defendant NMLB and clarifies that the Section 1983 claims against Defendants Baca and Alexander are brought against them in their individual capacities only. [*Id.*].

### 3. Plaintiff's Section 1983 Claims Against Defendant Alexander in His Individual Capacity Are Not Plausible on Their Face

In alleging a Section 1983 action against a government agent in the agent's individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The Tenth Circuit

has held that supervisors are not liable under Section 1983 "unless there is an affirmative link between the constitutional deprivation and the supervisor's exercise of control or direction, his personal participation, or his failure to supervise." *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)). The Tenth Circuit reasoned that, because supervisors can be held liable only for their own constitutional acts or illegal policies, and not for their employees' torts, supervisory liability requires a showing that such policies were a "deliberate or conscious choice." *Barney v. Pulsipher*, 143 F.3d at 1307-08 (citations and internal quotation marks omitted).

Defendant Alexander challenges the Section 1983 claims brought against him in his individual capacity arguing that the allegations in Plaintiff's complaint, if true, are insufficient to establish that he violated Plaintiff's rights under the First and Fourteenth Amendments. [Doc. 26, p. 2; Doc. 27, pp. 4-8].

i. **Plaintiff's Allegations Specific to Defendant Alexander**

Plaintiff points to the factual allegations contained in paragraphs 105-109, 111, 113-120, 127-129, 162, 165, and 167-168 of her complaint as sufficient to state plausible First and Fourteenth Amendment claims against Defendant Alexander. [Doc. 38, pp. 4, 5. 6]. These paragraphs contain the alleged facts described below:

Defendants Baca and Alexander directed Plaintiff and an inspector under her supervision to commit statutory and regulatory violations by returning cattle to an owner despite the terminated status of the brand with which the cattle were marked and by renewing the terminated cattle brand. [Doc. 1-3, ¶¶ 105-109, 111, 113-115]. Plaintiff refused to renew the terminated cattle brand maintaining that to do so would violate New Mexico law and NMLB policy. [Doc. 1-3, ¶ 116]. Defendants Baca and Alexander undermined her authority and committed statutory and regulatory violations by taking steps to renew the terminated cattle brand. [Doc. 1-3, ¶¶ 117-119]. Defendants

Baca and Alexander never took similar action to undermine or discredit Plaintiff's male counterparts. [Doc. 1-3, ¶ 117].

Plaintiff sent an email to Defendants Baca and Alexander in which she stated her position that they had committed statutory and regulatory violations. [Doc. 1-3, ¶ 120]. Defendants Baca and Alexander retained an investigator to conduct an administrative investigation regarding Plaintiff, the subjects of which were false and unsupported. [Doc. 1-3, ¶ 127]. Plaintiff's male counterparts engaged in conduct similar to the conduct for which Plaintiff was being investigated but were not subject to investigation. [Doc. 1-3, ¶ 128].

The present lawsuit was initiated on May 24, 2018 and Defendants were provided with a copy of the initial complaint on March 29, 2018. [Doc. 1-3, ¶ 162]. On May 10, 2018, a formal letter of reprimand was issued to Plaintiff without supporting information. [Doc. 1-3, ¶ 167]. Defendant Alexander personally handed Plaintiff a copy of the reprimand. [Doc. 1-3, ¶ 168]. Plaintiff and her attorney requested supporting documentation related to the reprimand so that a response could be submitted. [Doc. 1-3, ¶ 168].

> ii. **Plaintiff's Allegations Are Insufficient to Adequately Plead a First Amendment Violation by Defendant Alexander**

The Court recognizes that "[p]ublic employees do not surrender their First Amendment rights by virtue of their employment with the government." *Bailey v. Indep. Sch. Dist. No. 69*, 896 F.3d 1176, 1180 (10th Cir. 2018). "A government employer cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Id.* (internal quotation marks and citation omitted). However, because "the government has important interests in maintaining an efficient workplace and promoting the services that it renders" it is afforded "an increased degree of discretion in regulating a public employee's speech." *Id.* at 1180-81.

In assessing First Amendment claims in the context of public employment, the Court considers the following: "(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301-02 (10th Cir. 2009).

Determinative here is first prong of this analysis; "whether the employee spoke pursuant to [his] official duties." *Hesse v. Town of Jackson*, 541 F.3d 1240, 1249 (10th Cir. 2008) (internal quotation marks and citation omitted). "While employees retain the prospect of constitutional protection for their contributions to the civic discourse, they do not have First Amendment protection for statements made pursuant to employment responsibilities." *Id.* Where an employee "speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (internal quotation marks and citation omitted). "Thus, speech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation." *Hesse*, 541 F.3d at 1249 (internal quotation marks and citation omitted). "The determination of whether a public employee speaks pursuant to official duties is a matter of law." *Id.*

The Tenth Circuit takes a broad view of the definition of speech that is made pursuant to an employee's official duties. *See Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir.

2008). "[S]peech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform." *Brammer-Hoelter*, 492 F.3d at 1203. So long as the employee's speech "reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Id.*

"The ultimate question is whether the employee speaks as a citizen or instead as a government employee—an individual acting in his or her professional capacity." (internal quotation marks and citation omitted). To decide this question, the Court "must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Id.* at 1204. This requires the Court to take "a case-by-case approach, looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010).

Here, Plaintiff's allegations relative to Defendant Alexander, taken as true for purposes of this analysis, establish that Plaintiff communicated with Defendants Baca and Alexander, who were her supervisors at the NMLB, regarding a task they asked her to perform [Doc. 1-3, ¶¶ 105-109, 111, 113-115], which Plaintiff believed was contrary to applicable law and policies [Doc. 1-3, ¶¶ 116-120], and which Defendants Baca and Alexander ultimately performed themselves. [*Id.*]. Under these circumstances, Plaintiff's speech was not protected, and cannot serve as the basis for a First Amendment claim. *See Hesse*, 541 F.3d at 1249 ("While employees retain the prospect of constitutional protection for their contributions to the civic discourse, they do not have First Amendment protection for statements made pursuant to employment responsibilities.").

### iii. Plaintiff's Allegations Are Insufficient to Adequately Plead a Fourteenth Amendment Violation by Defendant Alexander

The Equal Protection Clause of the Fourteenth Amendment mandates that no state deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV. An equal protection violation occurs when a state actor treats someone differently than another who is similarly situated. *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir.1996); *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985); *Barney,* 143 F.3d at 1312 ("The Equal Protection Clause requires the government to treat similarly situated people alike").

"To make out a prima facie case of discrimination, [plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (internal quotation marks and citation omitted). Thus, "to assert a viable equal protection claim, plaintiff [ ] must first make a threshold showing that [she was] treated differently from others who were similarly situated to [her]." *Brown v. Montoya,* 662 F.3d 1152, 1172–73 (10th Cir.2011) (alteration in original) (internal quotation marks and citation omitted). Although "the 12(b)(6) standard does not require that [plaintiff] establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [plaintiff] has set forth a plausible claim." *Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir.2012) (alteration in original).

In the instant case, Plaintiff's Fourteenth Amendment claim is based on an alleged failure to compensate her at a rate comparable to her male counterparts and on alleged disparate treatment in the form of being undermined, investigated, and reprimanded.[3] [Doc. 1-3, ¶¶ 116-120, 123].

---

[3] To the extent that Plaintiff is also asserting a retaliation claim based on the alleged Fourteenth Amendment violations, such a claim is not viable. *See Maldonado v. City of Altus,* 433 F.3d 1294, 1308 (10th Cir.2006) ("[A] theory of liability for retaliatory conduct does not come within § 1983" (quotation and alteration omitted)); *Watkins v. Bowden,*

However, the factual allegations contained in Plaintiff's complaint are not specific with respect to the alleged constitutional violations by Mr. Alexander. Plaintiff does not allege that Defendant Alexander personally took any action to prevent her from being compensated at a rate comparable to that of her male counterparts. [Doc. 1-3, ¶¶ 116-120]. With respect to the alleged disparate treatment, Plaintiff states in a conclusory fashion that none of her male counterparts were undermined or discredited by Defendants Baca and Alexander as she was and that her male counterparts engaged in conduct similar to that for which she was investigated, and yet were not themselves investigated. [Doc. 1-3, ¶¶ 117, 128]. However, Plaintiff makes no specific factual allegations to support these conclusions.

Plaintiff's vague and conclusory allegations regarding disparate treatment are not sufficient to state a claim against Defendant Alexander for Fourteenth Amendment violations that is plausible on its face. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." (emphasis added)); *Safe Streets All.*, 859 F.3d at 878 (recognizing that "mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice" in the face of a 12(b)(6) challenge. A plaintiff "must offer specific factual allegations to support each claim. Thus, a claim is facially plausible if the plaintiff has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal quotation marks and citations omitted)).

---

105 F.3d 1344, 1354 (11th Cir.1997) ("A pure or generic retaliation claim ... does not implicate the Equal Protection Clause."); *Grossbaum v. Indianapolis–Marion County Bldg. Auth.,* 100 F.3d 1287, 1296 n. 8 (7th Cir.1996) ("[The Equal Protection Clause] does not establish a general right to be free from retaliation."); *Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir.1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation....").

### B. Plaintiff's WPA Claim Against Defendant Alexander in His Individual Capacity is Not Plausible on Its Face

#### 1. The Law Regarding the WPA

The WPA prohibits public employers from taking retaliatory action against a public employee for: (a) communicating "to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act"; (b) providing information to, or testifying "before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act"; or (c) objecting to or refusing "to participate in an activity, policy or practice that constitutes an unlawful or improper act." Section 10-16C-3.

The New Mexico Supreme Court has held that "the WPA does not create a right of action against a current or former state officer in his or her personal capacity." *Flores v. Herrera*, 2016-NMSC-033, ¶ 11, 384 P.3d 1070. Accordingly, any claims pled against Defendant Alexander in his individual capacity are not viable and should be dismissed. *Id.*

### C. Plaintiff's WPA Claim Against Defendant Alexander in His Official Capacity[4] and Plaintiff's IPRA Claim Against Defendant Torr Are Barred by Eleventh Amendment Immunity

#### 2. The Law Regarding the WPA

The Eleventh Amendment to the United States Constitution protects states, their agencies, and their officers acting in their official capacities from suit in federal court, unless the state

---

[4] Defendant NMLB also makes an argument that Plaintiff's WPA claim against it is subject to Eleventh Amendment immunity and should be dismissed. [Doc. 28, pp. 1-2; Doc. 29, p. 3-7]. However, no such claims have been asserted. [Doc. 1-3, ¶¶ 177-201]. To the extent that Plaintiff suggests that an amendment to her complaint to expressly add such claims is appropriate, the Court will not advise Plaintiff on whether or how to pursue such an amendment. *See* Fed. R. Civ. P. 8(a) (placing the burden on the pleader to adequately make a claim for relief ).

expressly and unequivocally waives its sovereign immunity or the United States Congress validly abrogates the state's immunity. *See Meade*, 841 F.2d at 1524-25 (holding that the Oklahoma Attorney General's office is subject to Eleventh Amendment immunity). Although the express language of the Eleventh Amendment bars only suits brought against a state by citizens of another state, it has long been settled that the Amendment also bars federal suits against a state by its own citizens. *See id.* at 1525.

"Exceptions to a state's Eleventh Amendment immunity are few." *Williams v. Bd. of Regents of Univ. of New Mexico*, 990 F. Supp. 2d 1121, 1143 (D.N.M. 2014). Congress may abrogate Eleventh Amendment immunity by statute, pursuant to section 5 of the Fourteenth Amendment, where the statute explicitly manifests Congress' intent to do so. *See id.* States may also waive Eleventh Amendment immunity voluntarily. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Arbogast v. Kansas, Dep't of Labor*, 789 F.3d 1174, 1182 (10th Cir. 2015). The Tenth Circuit has held that "[t]he test for determining whether a [s]tate has waived its Eleventh Amendment immunity from federal-court jurisdiction is a stringent one and in the absence of an unequivocal waiver specifically applicable to federal-court jurisdiction, we will not find that a [s]tate has waived its constitutional immunity." *Ellis v. Univ. of Ks. Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir. 1999) (internal quotation marks citations omitted).

A state can express its unequivocal intent to waive Eleventh Amendment immunity by statute, constitutional provision, or through its "actions, specifically, its participation in a particular federal program." *Arbogast*, 789 F.3d at 1182 (internal quotation marks and citation omitted). Waiver of a State's Eleventh Amendment immunity is only recognized where it is "stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Pettigrew v. Oklahoma ex rel. Oklahoma Dep't of Pub.*

13

*Safety*, 722 F.3d 1209, 1213–14 (10th Cir. 2013) (citing *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 308-09).

### 3. New Mexico Has Not Waived Eleventh Amendment Immunity for WPA Claims

Plaintiff argues that her WPA claims are properly before this Court because New Mexico has waived its Eleventh Amendment immunity by consenting to suit for WPA violations. [Doc. 36, pp. 5-6]. However, an examination of the statute's consent provision reveals only the State's consent to suit in its own courts.

Section 10-16C-4 provides in pertinent part that "[a]n employee may bring an action pursuant to [the WPA] in any court of competent jurisdiction." The inclusion of the phrase "any court of competent jurisdiction" in a sue or be sued clause has been interpreted by the United States Supreme Court to merely permit suit in any state or federal court already endowed with subject matter jurisdiction. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 560-61, 196 L. Ed. 2d 493 (2017). The phrase "any court of competent jurisdiction" in a sue or be sued clause is not considered an unequivocal waiver of Eleventh Amendment immunity because it doesn't indicate an intent to allow suit in federal court. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 75-76 (2000) (citing with approval the Court's decision in *Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946), where the Court held that while a state statute authorizing suit in any court of competent jurisdiction "undoubtedly provided for suit against the [state] in its own courts…the statute fell short of the required clear declaration by a [s]tate of its consent to be sued in the *federal* courts" and *distinguishing Kennecott* from the case before it which involved a federal statutory provision that authorized suit in "in any *Federal or State* court of competent jurisdiction." (emphasis in original) (internal quotation marks and citation omitted)).

Accordingly, the State's consent to suit in its own courts does not constitute consent to suit in federal court and is insufficient to waive Eleventh Amendment immunity for Plaintiff's WPA claims.

**4. New Mexico Has Not Waived Eleventh Amendment Immunity for IPRA Claims**

Plaintiff argues that New Mexico has waived its Eleventh Amendment immunity through IPRA's damages and enforcement provisions. [Doc. 35, pp. 4-8 (citing §§ 14-2-11 and -12)]. However, IPRA, like the WPA, does not include an unequivocal waiver of Eleventh Amendment immunity which would permit the state to be sued in federal court. Section 14-2-11 provides for damages allowable for IPRA violations as follows:

> A custodian who does not deliver or mail a written explanation of denial within fifteen days after receipt of a written request for inspection is subject to an action to enforce the provisions of the Inspection of Public Records Act and the requester may be awarded damages. Damages shall: (1) be awarded if the failure to provide a timely explanation of denial is determined to be unreasonable; (2) not exceed one hundred dollars ($100) per day; (3) accrue from the day the public body is in noncompliance until a written denial is issued; and (4) be payable from the funds of the public body.

Section 14-2-12 provides for enforcement of IPRA and damages as follows:

> A. An action to enforce the Inspection of Public Records Act may be brought by: (1) the attorney general or the district attorney in the county of jurisdiction; or (2) a person whose written request has been denied.
>
> B. A district court may issue a writ of mandamus or order an injunction or other appropriate remedy to enforce the provisions of the Inspection of Public Records Act.
>
> C. The exhaustion of administrative remedies shall not be required prior to bringing any action to enforce the procedures of the Inspection of Public Records Act.
>
> D. The court shall award damages, costs and reasonable attorneys' fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of the Inspection of Public Records Act.

Nothing in the language of these provisions constitutes an unequivocal consent to suit in federal court. There is, therefore, no waiver of Eleventh Amendment immunity for Plaintiff's IPRA claim.

### 5. This Court May Not Exercise Supplemental Jurisdiction Over Plaintiff's IPRA Claim

Plaintiff argues that in the absence of a waiver of Eleventh Amendment immunity this Court should exercise supplemental jurisdiction over her IPRA claim in this case, pursuant to 28 U.S.C. § 1367. [Doc. 35, pp. 8-12]. This argument is unavailing.

Eleventh Amendment immunity applies to pendant claims. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984). Pendant or supplemental jurisdiction is "a judge-made doctrine of expediency and efficiency derived from the general Art. III language conferring power to hear all 'cases' arising under federal law or between diverse parties." *Id.* The United States Supreme Court has held that the Eleventh Amendment "should not be construed to apply with less force to this implied form of jurisdiction than it does to the explicitly granted power to hear federal claims" because the "history of the adoption and development of the Amendment confirms that it is an independent limitation on all exercises of Art. III power: the entire judicial power granted by the Constitution does not embrace authority to entertain suit brought by private parties against a State without consent given." *Id.* at 120-121 (internal quotation marks and citation omitted).

Here, because Plaintiff's IPRA claim against Defendant Torr is barred by Eleventh Amendment immunity, Plaintiff's request that the Court exercise supplemental jurisdiction necessarily fails.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the Motion to Dismiss Plaintiff's Claims Against Defendant P. Robert Alexander [Doc 26], the Motion to Dismiss Plaintiff's Claims Against Defendant New Mexico Livestock Board [Doc 28], and the Motion to Dismiss Plaintiff's Claims Against Defendant Bernadette Torr [Doc 30]. As a result, the following are DISMISSED: Plaintiff's Cause of Action No. 1 as asserted against Defendant Alexander in his individual capacity; Plaintiff's Cause of Action No. 2 as asserted against the NMLB and Defendant Alexander in his individual capacity; Plaintiff's Cause of Action No. 3 as asserted against Defendant Alexander in his official capacity; Plaintiff's Cause of Action No. 4; and Plaintiff's Cause of Action No. 5.

**IT IS SO ORDERED.**

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent